E. C. CHAMBERS, *Plaintiff in Error*, v. JAMES ARMOUR, *Defendant in Error*.

Opinion Filed December 11, 1919.

Petition for rehearing denied March 18, 1920.

In a civil action at law where it duly appears that the verdict is contrary to the evidence, the judgment will be reversed.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Judgment reversed.

*Price & Price,* for Plaintiff in Error;

*A. J. Rose,* for Defendant in Error.

PER CURIAM.—Armour brought an action against Chambers to recover commissions for finding a purchaser of real estate, claiming $3,200.00 as commissions on a price of $16,000.00, less $150.00 paid. A demurrer to the declaration was overruled. Pleas were filed, and at the trial verdict and judgment for $3,050.00 and interest were rendered for the plaintiff. A motion for new trial was denied and the defendant took writ of error.

As the evidence shows an agreement that the plaintiff's commissions were to be paid out of money realized by the defendant from or on account of the sale, and as such moneys have not been realized, except $300.00, one-half of which was paid to the plaintiff as agreed, the verdict is contrary to the evidence, and the judgment is reversed.

All concur.

## On Rehearing.

PER CURIAM.—In a petition for rehearing it is suggested that the court misapprehended the issues herein.

The declaration alleges an employment to find a purchaser for land for a stated commission, the finding of a purchaser and the non-payment of the agreed commission.

There was a plea of never promised as alleged.

The plaintiff testified that he was employed by the defendant to find a purchaser for the land; that he found a purchaser who on June 14, 1913, entered into a contract with the defendant for the purchase of the land; that "I had nothing further to do than to find a purchaser in order to earn my commission. When I made my demand on Mr. Chambers for my $3,200.00 and he promised as I have stated, to send me check for it, he attached no conditions whatever to said promise. The money is still due me." "I had sold some other land for him. I received part of the commissions for these other sales, and he still owes me for them in part."

The plaintiff admitted that he discussed with the defendant the contents of a letter of July 26, 1913, from the defendant to plaintiff "relative to commissions to be paid you for the sale of" the lands. The letter contained a promise to pay the commissions as payments of the purchase price of the lands were made to the defendant. The plaintiff admitted that he was present when the letter was formulated "and suggested part of it, or dictated part of it," which part is shown in the parenthese in the letter below. The plaintiff also testified that "about that time" he received 50% of the first payment made by the purchaser to the defendant.

The defendant testified "I had an understanding with Mr. Armour before the sale was made as to the commission he would receive. The agreement was to give him 50% of the first $500.00 that was paid and 40% of each succeeding payment as they were paid to me. That was the verbal agreement before I ever saw Mr. Creveling (the purchaser). That was afterward reduced to writing. Mr. Armour came in one evening and wanted it reduced

to writing and I was very busy and told him to sit down and write it out with a pencil. That writing was after the agreement was made. He wanted to reduce the understanding to writing, and as ¦he had more time than I did he wrote it out in lead pencil and handed it to me and I handed it to my stenographer and had it written and gave him a copy and kept a copy of it. I signed both copies. This is one of them."

At this point counsel for defendant offered in evidence the letter dated July 26, 1913, which said letter was admitted in evidence, and is in words and figures as follows, to-wit:

Kansas City, Mo., July 26, 1913.

Mr. James Armour,

Olathe, Kansas.

Dear Sir:

Relative to commissions to be paid you for the sale of Section 34-49-40 Dade County Florida to T. N. Treavering, will state that this sale was made without the receipt of any cash, but we took Mr. Treavering's notes for same. The first one due September 1st, 1913, for $500. Of this amount we agreed to pay you $250.00 when received.

"We further agree to pay you 40% of all moneys paid on any of the notes we hold until we have paid you in all $3,200.00. We agree to pay you on the same date Mr. Treavering pays us, (or if sale should be made of this $8,000.00 mortgage which Mr. Treavering agrees to furnish us on March 1st, 1914, in that case we agree to pay you your commission in full).

E. C. CHAMBERS."

---

"I have never promised, either verbally or in writing, to pay Mr. Armour the commission or any part of it

which he claims is now due, before these collections were made. He has not made any demand on me for said money prior to bringing this suit. He wrote out in his own hand this paper (referring to letter last filed in evidence), which I signed. He never made any claim that I owed him any money except what I paid him until he found this $8,000 deal fell through."

The probative force of the above quoted and other testimony shows an greement to pay commissions as collections were made of the purchase money, rather than an agreement to pay the commissions upon finding a purchaser.

Rehearing denied.

All concur.